# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Statesboro Division

In the matter of: )
)   Chapter 12 Case
BETTY JEAN'S PRODUCE, LLC. )
)   Number 05-61223
         *Debtor* )

## MEMORANDUM AND ORDER

The Debtor's case was scheduled for confirmation and to consider a Motion to Dismiss by the Claxton Bank on March 16, 2006. After hearing the evidentiary presentations and in consideration of controlling or applicable law, I make the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Claxton Bank's Motion to Dismiss raises a number of serious allegations outlining a succession of previous bankruptcy cases filed by the principal owners of the Debtor, Betty Jean's Produce, LLC (hereinafter "BJ's"). BJ's is owned by members of the Easterling family, who have been participants in either Chapter 12 or Chapter 11 bankruptcy cases off and on since 1990. The history of those cases and the dealings between the parties during the periods of time when no bankruptcy case was pending triggered the Claxton Bank's Motion alleging bad faith, unreasonable delay prejudicial to creditors, and continuing loss and diminution of the Debtor's estate, coupled with an absence of any reasonable likelihood of rehabilitation. Despite the sweep and the breadth of the allegations, much of

AO 72A
(Rev. 8/82)

the testimony at the March 16, 2006 hearing centered on whether BJ's has any current crop in the ground, the proceeds from which could fund its Chapter 12 plan. More broadly, the Claxton Bank argues that even if BJ's is entitled to the proceeds from the current year's crop, the projections are unrealistic and the Court should recognize that fact at this juncture rather than allow additional time to accrue before BJ's inevitably fails to make planned payments.

This Order will focus on these dual arguments inasmuch as the complete history of the previous filings, while extremely troubling, was not fully developed on the record of the hearing.

The unrefuted testimony from the March 16, 2006 hearing regarding the crop proceeds is that the crops planted for the 2005-2006 crop season that BJ's intends to bring to market to pay its debts was not planted by BJ's. Rather, those crops were planted by Easterling Farms, LLC, a separate and distinct corporation. Although Betty Jean Easterling apparently is a principal officer in both corporations, they are, in fact, legally separate and distinct corporations.

BJ's executed a security agreement and a promissory note on September 22, 2005, whereby it borrowed the sum of $79,000.00 from Thurmond Strickland and pledged to secure repayment of that obligation with, among other things:

> All crops, annual or perennial, and all products of such crops; . . . [and] the proceeds and products of the foregoing . . . [Further,] all payments, rights to payment . . . general intangibles and benefits, including, but not limited to, payments in kind, deficiency payments, letters of entitlement, storage payments, emergency assistance, diversion payments, production flexibility contracts . . . from any preexisting, current or future federal or state government program. . . .

(Strickland Exb. 1, ¶ 1).

In that security agreement, BJ's warranted that:

> The legal name of the Debtor is as set forth at the top of the first page of this Agreement. The Debtor has not used any trade name, assumed name or other name except the Debtor's name stated above.

(Strickland Exb. 1, ¶ 2(a)).

BJ's further warranted that:

> The Debtor is the owner of the Collateral, will be the owner of the Collateral hereafter acquired, or has sufficient rights in the Collateral to transfer an interest, free of all security interests, liens and encumbrances other than the Security Interest and any other security of the Secured Party. The Debtor shall not permit any security interest, lien or encumbrance, other than the Security Interest and any other security interest of the Secured Party, to attach to any Collateral without the prior written consent of the Secured Party.

(Strickland Exb. 1, ¶ 2(f)).

This security agreement was perfected by the filing of a UCC Financing Statement in Tattnall County Superior Court on September 28, 2005. (Strickland Exb. 2).

BJ's also executed a security agreement to secure a $75,000.00 enabling loan for the 2005-2006 Vidalia Onion crop in favor of Robert DeBruyn. It pledged the:

> 2005-2006 Vidalia Onion crop produced by the Debtor on the lands in Tattnall County, Georgia described in Exhibit "A" attached hereto, including all inventory and proceeds from said crop whether sold as fresh produce or out of cold storage.
>
> (Exb. D-21).

It provided that:

> Debtor warrants title to the property herein described and that it owns it free and clear of all liens, encumbrances and claims and prior security interests and that he will defend title hereto in favor of Secured Party;
>
> (Exb. D-21).

That security agreement was secured by a UCC Financing Statement filed in Tattnall County Superior Court on October 31, 2005.

BJ's originally projected that it would plant approximately 200 acres of Vidalia Onions, but, in fact, only 153 acres of onions are in cultivation. The unrefuted

testimony is that all those crops were reported as owned and planted in the name of Easterling Farms, LLC. Those crop reports on FSA-578 forms were made to the United States Department of Agriculture Farm Service Agency and to the crop insurance carrier. Claxton Bank contends, therefore, that all proceeds from the sale of the crops and all crop disaster claim payments and insurance claim payments would be due and payable to Easterling Farms, LLC, and not to BJ's.

## CONCLUSIONS OF LAW

Pursuant to 11 U.S.C. § 1208(c),[1] this Court is authorized to dismiss a Chapter 12 case for cause upon the request of a party in interest and after notice and a hearing. 11 U.S.C. § 1208(c). Although Section 1208(c) provides specific grounds that may constitute sufficient cause for dismissal, this Court is not limited by this list. In re Hyman, 82 B.R. 23, 24 (Bankr. D.S.C. 1987). It is well established that the filing of a Chapter 12 case in bad faith may constitute sufficient cause for dismissal pursuant to Section 1208(c).[2] Id.; In re Burger, 254 B.R. 692, 697 (Bankr. S.D. Ohio 2000)(stating that the ultimate inquiry in determining the debtor's bad faith filing of a Chapter 12 case is whether the debtor has abused the bankruptcy process).

---

[1] Hereinafter, all Section references are to Title 11 of the United States Code.

[2] Section 1208(c) speaks only of dismissal, not conversion. As a result, a bankruptcy court may not involuntarily convert a Chapter 12 case to Chapter 7 for cause or because it believes that conversion is in the best interests of creditors. A Chapter 12 case may be involuntarily converted only when there is a finding that the debtor has committed fraud in connection with the case. 11 U.S.C. § 1208(d). Because there is insufficient evidence to conclude that BJ's committed fraud in connection with the case, this Court may not involuntarily convert this Chapter 12 case.

The Court cannot overlook certain controlling facts in this case. Among these include the fact that the crop of onions that BJ's claims to own was reported to the Farm Service Agency in the name of Easterling Farms, LLC. Every FSA-578 form requires specific information about the Operator, including name and address, farm number, identification numbers, crop or land use, etc. Furthermore, the FSA-578 form contains an Operator's Certification, pursuant to which the Operator certifies "to the best of my knowledge and belief that the acreage of crops and land uses listed herein are true and correct."

In its Chapter 12 bankruptcy schedules, BJ's claimed as personal property, under Item 32,[3] "8 acres of onion beds being transplanted on to 207 acres." *See* Dckt. No. 1 (October 31, 2005). In her role as President of BJ's, Betty Jean Easterling signed BJ's bankruptcy petition under penalty of perjury and affirmed that the information contained therein was true and correct. Furthermore, in Exhibit A to its Plan of Arrangement, Robert DeBruyn is listed as a creditor of BJ's with a lien on "207 acres of onions." *See* Dckt. No. 22 (January 17, 2006). The Plan was signed by Jon A. Levis, attorney for BJ's.

As of the hearing date, there was no legally enforceable obligation and no contract of record between Easterling Farms, LLC, and BJ's assigning any interest in that crop or the proceeds of it to BJ's nor requiring Easterling Farms, LLC, to pay any sums to BJ's. In short, much of the credit that has been extended for the production of this crop was

---

[3] Item 32 on Schedule B - Personal Property includes "Crops - growing or harvested."

extended to BJ's, but Easterling Farms, LLC, owns or may own that crop. Claxton Bank claims that these actions by BJ's are fraudulent and cannot be cured by any post-March 16, 2006, actions to assign or transfer that interest from Easterling Farms, LLC, to BJ's.

Although some of the record is hazy, I conclude, for the purposes of this Motion, that, at best, BJ's has created a cloud on title to the current crop, while Easterling Farms, LLC, is the beneficiary of any crop insurance or federal disaster payments that might emanate from the crop. Moreover, BJ's has borrowed money and utilized the proceeds of those loans to plant the current crop in the name of Easterling Farms, LLC. It has also warranted that it has good title to all the collateral pledged to Strickland and DeBruyn, including the crop, but it has organized its affairs so that that title was, as of the date of the hearing, not unequivocally in the name of BJ's. Easterling Farms, LLC, has not executed any legal obligation to repay either Thurmond Strickland or Robert DeBruyn. Although, in equity, title might be transferrable to BJ's, there can be no certainty that creditors of Easterling Farms, LLC, have not in the meantime extended credit in reliance on the same crop.

BJ's explanation for this murky, unconventional, and allegedly fraudulent handling of its crop loans and the reporting of its crop to government agencies, is that it was necessitated because BJ's has an unfavorable reputation in the community as a result of its previous bankruptcy filings. The principals apparently believed that they would be better able to do business in the community with various vendors, suppliers, or others not identified

at the March 16, 2006 hearing if they operated under the name Easterling Farms, LLC, which, although a company owned by members of the same family, had not previously filed any bankruptcy proceedings. That explanation in and of itself is troubling because it raises the inference that BJ's was attempting to conceal its role from certain creditors, while borrowing money in the name of BJ's and pledging collateral to which it warrants clear title to other creditors. It also raises serious issues concerning the truthfulness of BJ's dealings with government agencies to whom crop reporting information has been provided.

The Court cannot ignore these differing claims of ownership of the crop. Although BJ's expects a healthy and prosperous crop this year, the "nature of farming is inherently risky, and a crop yield is affected by numerous and varied factors such as soil, weather, seed, weeds, and other conditions." Zutz v. Case Corp., 2006 WL 463539, *5 (D. Minn. 2006)(quotations and citations omitted). If benefits or insurance proceeds are paid out by the federal government or crop insurers, the filing of the FSA-578 forms in the name of Easterling Farms, LLC, means that such funds will not be immediately directed to and in the name of BJ's. Such a scenario could gravely impact BJ's success under any Chapter 12 plan.[4] Allowing this case to go forward despite the questions surrounding the ownership of the 2005-2006 Vidalia Onion crop and BJ's conflicting representations to this Court, creditors, and federal agencies concerning that ownership would condone abuse of the

---

[4] Pursuant to Section 1208(c)(9), cause for dismissal of a Chapter 12 case includes "continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1208(c)(9). BJ's loss of federal benefits or insurance proceeds as a result of the filing of the FSA-578 forms by Easterling Farms, LLC, would undoubtedly impact the success of a plan of rehabilitation.

bankruptcy code and disregard its goal of successful rehabilitation.

Furthermore, the Court must recognize BJ's recent history of failed bankruptcy cases. BJ's filed a Chapter 12 case on June 23, 2003. *See* Case No. 03-60746. After the Georgia Department of Revenue filed a Motion to Dismiss, that case was dismissed on June 16, 2005. BJ's filed another Chapter 12 case on August 1, 2005. *See* Case No. 05-60789. Upon a secured creditor's Motion to Dismiss, that case was dismissed on September 23, 2005. Finally, the present case began when BJ's again filed for Chapter 12 protection on October 31, 2005. *See* Case No. 05-61223.

In its first two bankruptcy cases, BJ's never achieved the confirmation of a plan of rehabilitation. Furthermore, over the last year, BJ's has been a debtor in three pending Chapter 12 cases. The first two cases were dismissed upon the motions of creditors. Finally, not even a month and a half of time separates the dismissal of the second bankruptcy case on September 23, 2005 from the filing of the present case on October 31, 2005. The history and circumstances of these cases are further evidence of bad faith on the part of BJ's.[5] *See* In re Brown, 319 B.R. 691, 693 (Bankr. M.D. Ala. 2005)("Multiple or repeated bankruptcy filings do not constitute *per se* bad faith, however a debtor's history of filings and dismissals may be evidence of bad-faith."); In re Dupuy, 308 B.R. 843, 850 (Bankr. E.D. Tenn. 2004)(stating that a bankruptcy court may find bad faith when a debtor has a history

---

[5] In addition to evidencing bad faith, BJ's history of bankruptcy filings invokes Section 1208(c)(1), which permits dismissal for "unreasonable delay, or gross mismanagement, by the debtor that is prejudicial to creditors." 11 U.S.C. § 1208(c)(1).

of multiple filings and dismissals).

Finally, at the March 16, 2006 hearing, BJ's was directed to file a recast Plan within three weeks. That deadline expired on April 7, 2006, and no Plan has been filed. Essential to any recast Plan would have been the disclosure of additional evidence clarifying the relationship between Easterling Farms, LLC, and BJ's and the competing claims, if any, of their respective creditors. That information may or may not have been persuasive or helpful to BJ's, but it has not been forthcoming, and the harvest has now begun. Time has expired. This failure is further evidence of BJ's bad faith in the filing and prosecution of this bankruptcy case.[6] *See* <u>In re Kerr</u>, 908 F.2d 400, 404 (8th Cir. 1990)(agreeing with the bankruptcy court's finding of bad faith when the debtor, *inter alia*, violated court orders by failing to provide monthly financial records and account for dealings with creditors).

## ORDER

PURSUANT TO THE FOREGOING, it is the Order of this Court that Claxton Bank's Motion to Dismiss be GRANTED.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
_____
4/18/06

---

[6] This failure also represents another prejudicial delay for creditors, which constitutes sufficient cause for dismissal pursuant to Section 1208(c)(1).

10

This 18th day of April, 2006.